UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STEPHEN C. HUDSON, SR.                                  Civ. No. 16-58 (SRN/JSM)

    Plaintiff,                        **AMENDED REPORT AND RECOMMENDATION**

v.

WILFORD, GESKE & COOK, P.A.
SCHILLER & ADAM, P.A.,

    Defendants.

The above matter came before the undersigned on defendant Schiller & Adam, P.A.'s Motion to Dismiss [Docket No. 6]; defendant Wilford, Geske & Cook, P.A.'s Motion to Join in Defendant Schiller & Adam, P.A.'s Motion to Dismiss [Docket No. 16]; and plaintiff's Request for Default Judgment [Docket No. 24]. Pursuant to this Court's Order dated April 4, 2016, this Report and Recommendation is being issued based on the parties' written submissions.[1] [Docket No. 46]. These motions were referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Docket Nos. 12, 33, 44].

---

[1] A hearing on the motions was scheduled to take place before the undersigned on April 4, 2016. On Saturday April 2, 2016, at 4:09 p.m., Hudson sent an email to the chambers of District Court Judge Susan Richard Nelson, with copies to this Court's chambers and to defendants' counsel, stating his belief that he was not legally obligated to attend the April 4, 2016, motions hearing. Hudson also stated that he had been called out-of-town and did not anticipate returning until April 6, 2016. Hudson sought to have the hearing rescheduled. This Court received Hudson's email the morning April 4, 2016, shortly before the hearing was to begin. Counsel for both defendants appeared at the hearing; Hudson did not appear. Defendants' counsel expressed their preference for having the Court decide the motions on the parties' written submissions. The Court subsequently issued an Order stating that it would issue this Report and Recommendation based on the parties' written submissions. Order dated April 4, 2016.

## I. BACKGROUND

### A. **Procedural History**

Plaintiff Stephen C. Hudson, Sr. sued the law firms of Wilford, Geske & Cook, P.A. ("WGC") and Schiller & Adam, P.A. ("S & A") for actions the firms took in foreclosing on Hudson's residential property.[2] In lieu of answering, S & A moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [Docket No. 6]. Similarly, GWC did not answer and instead moved to join S&A's Motion to Dismiss. [Docket No. 16]. Hudson moved for default judgment against both defendants based on his belief that defendants were required to answer the Complaint. Plaintiff's Request for Default Judgment, p. 1 [Docket No. 24].

On April 22, 2016, Hudson filed a Notice of Voluntary Dismissal of his claims against S & A (but not WGC) pursuant to Rule 41(a)(1)(A)(i). [Docket No. 51]. The

---

[2] This is not the first time that Hudson sued regarding the foreclosure and sale of his property. Hudson previously sued WGC and one of its attorneys, David Mortensen, for their role in the foreclosure. See Hudson v. Chase Bank, LLC, et. al., Civ. No. 15-3034 (ADM/JJK) ("Hudson I"). In that case, Hudson applied for In Forma Pauperis ("IFP") status. Hudson I, Docket No. 2. Magistrate Judge Jeffrey Keyes recommended that the IFP application be denied and the complaint be dismissed. Hudson I, Report and Recommendation [Docket No. 3]. Hudson objected to the recommendations, and subsequently withdrew his IFP application. Hudson I, Docket Nos. 4, 5. Judge Ann Montgomery denied Hudson's IFP application as moot and summarily adopted Judge Keyes' recommendation regarding dismissal. Hudson I, Order [Docket No. 6]. The Complaint in the instant matter repeats verbatim many of the allegations in the complaint in Hudson I, and refers frequently to Mortensen, although he is not a defendant in this action.

S & A stated that Hudson filed a state court lawsuit regarding the foreclosure, In the Matter of the Petition of Stephen C. Hudson, Case No. 27-ET-CV-14-925, and this lawsuit was dismissed sua sponte. Memorandum in Support of Shiller & Adam, P.A.'s Motion to Dismiss ("S & A's Mem."), p. 1, n.1 [Docket No. 8]. The Court has no other information regarding that lawsuit.

2

District Court entered an Order of Dismissal on April 26, 2016, as to S & A. [Docket No. 53].

### B.     Hudson's Complaint

Hudson alleged the following in his Complaint.

Hudson asserted that WGC and Select Portfolio Services ("SPS")[3] committed a conspiracy to defraud through WGC's attorney Mortensen, based on the illegal sale of his home on July 7, 2015. Complaint, ¶ 7 [Docket No. 1]. More specifically, Hudson claimed that from November 2013 through May 2014, he had contacted SPS numerous times requesting the opportunity to review the "wet ink mortgage" allegedly granting SPS a legal financial interest in his home. Id., ¶ 9. SPS refused his request and on June 23, 2014, Mortensen and WGC informed Hudson that they had been retained by SPS to foreclose on his home, and he had 30 days to dispute the validity of SPS's claim of financial interest in the property. Id., ¶ 10. The next day, Hudson disputed SPS's interest in his mortgage and right to foreclose and requested the "wet ink mortgage" containing the legal description of his property. Id., ¶ 11. On July 2, 2014, Mortensen and WGC provided Hudson with proof of SPS's claim, but Hudson claimed that this documentation showed that his mortgage was an "illegal" subprime mortgage and the lien document did not contain a legal description of the property. Id., ¶¶ 12, 14. Hudson again demanded that Mortensen and WGC allow him to review the "wet ink mortgage" containing the legal description of his property, but they refused and instead directed

---

[3]     According to S & A, Deutsche Bank held the mortgage on Hudson's property, and SPS was the loan servicer of Hudson's mortgage loan. S & A's Mem., p. 1. According to Hudson, Deutsche Bank had unsuccessfully tried to foreclose on his home on two earlier occasions. Complaint, ¶ 9

him to the Hennepin County Registrar of Titles to review a "legally recognized document supporting the mortgage lien" by SPS. Id., ¶ 17.

Hudson alleged that on February 1, 2015, he sent Mortensen and WGC an email regarding the status of WGC's representation of SPS and in that email informed WGC that if he did not receive a response, he would assume that WGC no longer represented SPS. Id., ¶ 19. On April 8, 2015, Mortensen and WGC filed a Notice of Sale regarding the property, but according to Hudson, WGC did not represent SPS, and could not initiate a new foreclosure proceeding. Id., ¶ 20. On April 29, 2015, WGC fraudulently informed Hudson by letter that SPS had retained WGC to initiate foreclosure proceedings and Hudson had 30 days to contest the validity of the foreclosure pursuant to Minnesota law. Id., ¶ 24.

On May 7, 2015, WGC served a Notice of Foreclosure Sale on Hudson, which stated that the property would be sold at a sheriff's sale on June 17, 2015. Id., ¶ 26. Hudson contends that scheduling the sale before the expiration of the 30-day statutory dispute period was illegal. Id. WGC subsequently postponed the sale until July 7, 2015, which Hudson asserted was due to WGC's failure to follow the 30-day period, and because the May 7, 2015, Notice of Foreclosure Sale had been fraudulently served on him and WGC[4] was required to personally serve him with the Notice of Postponement. Id., ¶ 28. On May 20, 2015, WGC served a second Notice of Foreclosure Sale by mail, which Hudson contended had to be served on him personally.

---

[4] This paragraph stated that "the Defendants" were required to execute personal service of the Notice of Foreclosure Sale on Hudson. Complaint, ¶ 28. The Complaint did not allege that S & A had any involvement in the foreclosure at this point, so it is not clear why Hudson refers to "defendants" at times and to WGC at times. At any rate, the Complaint frequently fails to distinguish between the actions of WGC and S & A.

Id., ¶ 30. On May 24, 2015, the "defendants" served another Notice of Sale informing Hudson that his property would be sold on June 17, 2015. Id., ¶ 32.

On July 2, 2015, Hudson contacted Mortensen and WGC by mail demanding that the foreclosure sale be reversed based on the illegal actions by WGC. Id., ¶ 34. Hudson threatened legal action against WGC if his property was not returned to him. Id. On July 6, 2015, WGC informed Hudson by letter that the sale had been postponed to July 7, 2015; "all steps required by state and federal laws have been satisfied;" they had previously provided him with the appropriate validation of SPS's legal claim; and "intimated" that scheduling the foreclosure sale before the end of the 30-day dispute period did not violate Hudson's rights. Id., ¶ 35.

On July 7, 2015, the "defendants" sold Hudson's property in violation of state and federal law. Id., ¶ 37.

On July 20, 2015, Hudson asked Mortensen and WGC to provide him with the original cover letter to their July 6, 2015, letter to him, but WGC refused, contending that the original had no more legal significance than the scanned, emailed version he was provided. Id., ¶ 38.

On September 12, 2015, Hudson emailed a copy of the complaint in Hudson I to Mortensen and "all WGC named partners," expressing his desire to resolve the "grossly illegal" foreclosure sale, and requesting a satisfaction of mortgage. Id., ¶¶ 41, 43. On September 23, 2015, Mortensen responded by email that he would "provide this additional proposal to my client as part of our continuing discussions. Once my client has made a decision regarding how to proceed, I will let you know." Id., ¶ 44. On November 2, 2015, Hudson emailed Mortensen to state that the statutory six-month

redemption period would expire on January 7, 2015, and that he had still not received a response. Id., ¶ 46.

Sometime between November 2 and November 4, 2015, Mortensen "and/or WGC" contacted Rebecca Schiller, a partner at S & A, to ask S & A to contact Hudson "purporting to legally represent D[eutsche] B[ank] and SPS." Id., ¶ 47. Hudson alleged that this action was taken to discourage him from contacting Deutsche Bank or SPS directly. Id. Schiller contacted Hudson on November 4, 2015, and told him that Deutsche Bank would not issue a satisfaction of mortgage and that it considered the foreclosure valid. Id., ¶ 48. On the same day, Hudson contacted Schiller by email to inform Schiller that neither Mortensen nor WGC had ever legally represented Deutsche Bank or SPS in connection with the foreclosure and that her statement that S & A had been retained to represent Deutsche Bank and SPS could lead to her disbarment. Id., ¶ 50. Hudson asked Schiller to provide proof of S & A's engagement by Deutsche Bank and SPS within ten days, to avoid being named a defendant in the instant lawsuit. Id. On November 7, 2015, Schiller contacted Hudson by email to tell him that she was not required to provide him with attorney-client privileged communications and that as an officer of the court, she was informing him that she had been retained by Deutsche Bank and SPS. Id., ¶ 51.

Hudson alleged that the defendants "failed to provide [him] with the opportunity to avoid the total loss of [his] only 'retirement funding' through the execution of short sale throughout the six month redemption period as required by law." Id., ¶ 53.

Hudson summarized the allegations in his Complaint as follows:

> Summarily, the Defendants have grossly and fraudulently
> conspired to steal Plaintiff's homestead property; property

6

> which constitutes Plaintiff's only 'retirement savings.' The Defendants stole Plaintiff's homestead property by 1). Utilizing two unregistered legal agents (on two separate occasions), 2). Legally recognizing a predatory adjustable rate note which is invalid and unenforceable under Minnesota law, 3) failing to produce a mortgage lien containing the legal description of Plaintiff's homestead property and 4) violating a multitude of other Minnesota foreclosure proceeding laws. The Defendants committed this egregious act after Plaintiff informed the Defendants of the grossly illegal nature of their intended actions.

Id., ¶ 55.

Hudson claimed that WGC's actions violated his right to procedural due process; violated 18 U.S.C. §§ 241 (conspiracy against rights), 242 (deprivation of rights under the color of law) and § 245 ("Federally prohibited actions"); and constituted conspiracy to defraud, gross conspiracy to defraud, grand larceny and malicious use of process (or gross malicious use of process). Id., ¶¶ 4, 8, 13, 15, 18, 21, 23, 25, 27, 29, 31, 33, 36, 39, 42, 45, 49, 52, 54.

As relief, Hudson sought $600,000 against WGC for conspiracy to defraud, $300,000 for gross conspiracy to defraud and $400,000 for gross/malicious use of process.[5] Id., Prayer for Relief, ¶ 1. Hudson also sought "[t]he confinement of the Defendants as prescribed by law." Id., ¶ 2.

### B. S & A's Motion to Dismiss and WGC's Motion to Join [Docket Nos. 6, 16].

S & A moved to dismiss Hudson's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. S & A's Mem., pp. 2-3. S & A argued that Hudson's claims based on 18 U.S.C. §§ 241, 242 and 245 were barred because they were based

---

[5] Hudson had also sought against S & A the sum of $300,000 for gross conspiracy to defraud and $400,000 for gross/malicious use of process. Complaint, Prayer for Relief, ¶ 1.

on federal criminal statutes, which do not create a private right of action. Id., pp. 3-4. Likewise, while Hudson's "grand larceny" claim did not refer to a specific federal criminal statute, S & A asserted that no private cause of action could be pursued for this crime. Id., p. 4. Further, Hudson's due process claim failed because S & A is not a state actor. Id., pp. 4-5.

With respect to Hudson's claim for "Malicious Use of Process and Gross Malicious Use of Process," S &A contended that the Complaint contained no factual support for this claim. Id., pp. 5-6. Hudson did not allege that S & A filed any action him in any court; rather he only alleged that S & A contacted him to state that it was representing Deutsche Bank and SPS and that a satisfaction of mortgage would not be provided to him. Id., p. 5. According to S & A, those allegations were insufficient to state a claim. Alternatively, in light of the failure of Hudson's federal claims, S & A submitted that the Court should not exercise supplemental jurisdiction over this state law claim. Id., p. 5, n.2. S & A sought dismissal of the Complaint with prejudice. Id., p. 6.

WGC moved to join in S & A's motion to dismiss, joining in S & A's arguments in favor of dismissal. WGC's Memorandum in Support of Motion to Join, p. 1 [Docket No. 18].

Hudson submitted a one-page response to S & A's Motion to Dismiss. Plaintiff's Response in Opposition [Docket No. 25]. Hudson stated that he did not oppose S & A's Motion to Dismiss, despite the fact that he was not properly served with the motion and despite knowing of a "personal relationship that exists between Magistrate Judge

.
.
.

Mayeron and the Defendant which is <u>clearly</u> placing Plaintiff at significant legal disadvantage." Id. (emphasis in original).

Two weeks later, Hudson filed a pleading captioned "Plaintiff's <u>Second</u> Response to Defendant Schiller & Adams's Motion to Dismiss." (Emphasis in original). [Docket No. 28]. Hudson stated that while he previously did not oppose S & A's Motion to Dismiss, he did so now because the motion was filed in violation of his Constitutional due process rights and S & A failed to legally serve him with the Motion. Id. Hudson did not substantively address S & A's arguments in favor of dismissal in either response.

Hudson opposed WGC's request to join in S & A's Motion to Dismiss in a three-line response. Plaintiff's Response to Defendant [WGC]'s Joinder in Defendant [S & A]'s Motion to Dismiss [Docket No. 27]. Hudson claimed that WGC's motion violated his Constitutional due process rights and WGC filed its motion "grossly fraudulently and in violation of Plaintiff's Constitutional right to 'Due Process.'" Id.

As noted above, Hudson subsequently voluntarily dismissed his claims against S & A with prejudice.

### C.     **Hudson's Motion for Default Judgment [Docket Nos. 24]**

Several weeks after S & A served and filed its Motion to Dismiss, Hudson filed a motion for default judgment. Plaintiff's Request for Default Judgment [Docket No. 24]. Hudson contended he was entitled to default judgment on the following grounds: (1) the defendants' "unyielding illegal behavior" subsequent to Hudson notifying them of their illegal behavior and his intent to file the instant Complaint if they did not "immediately correct their behavior;" (2) defendants' failure to answer the Complaint; (3) "the Court's

previous insistence (U.S. District Court case no 15-CV-3034) that Plaintiff exclude Complaint allegations in clear violation of Plaintiff's constitutional rights guaranteed by 'Due Process and 42 U.S.C. [§] 1983;"[6] (id., p. 1); (4) "the Court's insistence . . that Plaintiff exclude properly named 'Defendants from this Complaint, (id.); (5) S & A's filing of a Motion to Dismiss "a document clearly purposed to defraud the court and conspire with the court to further deny Plaintiff his constitutional right to 'Due Process;' (id., p. 2); and (6) WGC's filing of documents in connection with this matter, which were also intended to defraud the Court. Id. Hudson indicated that he was no longer seeking the confinement of the defendants or their counsel. Id.

WGC responded that it timely filed its Motion for Joinder in S & A Motion to Dismiss in lieu of answering pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. WGC's Memorandum in Opposition to Motion for Default Judgment [Docket No. 29]. Hudson replied that he was never served with WGC's response to his request for default. Plaintiff's Reply to Plaintiff's Request for Default Judgment [Docket No. 32].

On March 22, 2016, Hudson filed a "Demand for Default Judgment" in which he stated that neither defendant had served him with a response to his request for default judgment. [Docket No. 34]. This Court denied that demand, but required WGC to file a certificate of service stating it had served Hudson with its opposition papers. Order dated March 24, 2016 [Docket No. 35]. In response, WGC acknowledged that it had inadvertently not served a copy of its opposition on Hudson, but did so on March 25,

---

[6] Hudson is apparently referring to Judge Montgomery's Order adopting Magistrate Judge Keyes' recommendation in Hudson I that Hudson's complaint be dismissed on the ground that he could not recover under § 1983 because none of the defendants were state actors. Hudson I Order, Hudson I Report and Recommendation.

10

2016. Affidavit of Michael A. Klutho [Docket No. 39]. WGC sought an extension of time to serve its response, so that its response would be deemed timely. WGC's Motion for Extension of Time [Docket No. 36]. This Court granted WGC's motion. Order dated April 4, 2016.

## II. DECISION

### A. Subject Matter Jurisdiction

Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. See Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). See also Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (rejecting "merely general and conclusory allegations," and requiring that a "pro se complaint must contain specific facts supporting its conclusions.").

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework. That is quite different, however, from requiring the district court to assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.

Stone, 364 F.3d at 915.

S & A (and by joinder in the motion, WGC) did not move to dismiss for lack of subject matter jurisdiction. Instead, it couched its motion under Rule 12(b)(6), claiming that all of Hudson's federal causes of action failed to state a claim as a matter of law. Nonetheless, if a court discovers at any time during the pendency of a case that it does not have subject matter jurisdiction, it must dismiss the case. Fed. R. Civ. P. 12(h)(3). "Subject matter jurisdiction . . . is a threshold requirement which must be assured in

every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991). "[W]here jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte." Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971) (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)).

The Complaint alleged federal question jurisdiction under 28 U.S.C. § 1331.[7] Complaint, p. 2. However, "[a] court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint." Biscanin v. Merrill Lynch & Co., Inc., 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." Id. (citations omitted). "It is well-settled that the plaintiff bears the burden of establishing subject matter jurisdiction." Nucor Corp. v. Nebraska Pub. Power Dist., 891 F.2d 1343, 1346 (8th Cir. 1989). Thus, the Court's initial inquiry must focus on whether Hudson's purported federal claims are patently meritless, such that he cannot invoke federal question jurisdiction under 28 U.S.C. § 1331.

Sections 241, 242 and 245 of Title 18 of United States Code are federal criminal statutes and do not provide a private cause of action by Hudson. Roberson v. Pearson, No. Civ. No. 12-2056 (ADM/FLN), 2012 WL 4128303, at *1 (D. Minn. Aug. 27, 2012), Report and Recommendation adopted by 2012 WL 4128293 (D. Minn. Sept. 18, 2012) (citing United States v. Wadena, 152 F.3d 831, 846 (8th Cir. 1998) ("Courts repeatedly have held that there is no private right of action under § 241"), cert. denied, 526 U.S.

---

[7] The Complaint did not allege diversity jurisdiction, nor could it as WGC and Hudson are both citizens of Minnesota. See Complaint, p. 1; Report and Recommendation, Hudson I, p. 2 (noting that the court did not have diversity jurisdiction over the complaint in that case because Hudson, WGC and attorney David Mortensen were all Minnesota citizens).

12

1050 (1999); Newcomb v. Ingle, 827 F.2d 675, 677, n.1 (10th Cir. 1987) (per curiam) ("Section 241 is a criminal statute prohibiting acts of conspiracy against the rights of citizens, and it does not provide for a private civil cause of action."); Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) (per curiam) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241–242"); Lang v. Quinlan, 1993 WL 129675, (5th Cir. 1993) (unpublished opinion) (per curiam) at *4 ("Section 241, which criminalizes conspiracies to deprive a person of 'any right or privilege secured to him by the Constitution or laws of the United States,' does not give rise to a private cause of action."); Campbell v. McMinn County, Tenn., No. 1:10–CV–278, 2012 WL 369090 at *9 (E.D. Tenn. Feb. 3, 2012) ("18 U.S.C. § 245 is a criminal statute 'which does not give rise to any civil cause of action') (citations omitted); Singh v. New York State Dept. of Taxation & Finance, Civ. No. 06–00299C(F), 2011 WL 3273465 at *36 (W.D. N.Y. July 28, 2011) ("§ 245 does not provide for a private, civil cause of action and Plaintiff, as a private citizen, is without any standing to criminally prosecute Defendants under § 245")).

The Complaint alleged that the defendants committed "grand larceny," but Hudson did not specify whether he was attempting to bring this claim under state or federal law.[8] In any event, if Hudson was attempting to bring a federal claim, the federal criminal statutes do not give rise to a private cause of action, as explained above.

---

[8] For example, 18 U.S.C. § 641 describes the crime of theft or larceny of money or property from the United States government. It does not provide a private right of action. Retanan v. California Dep't. of Corr. & Rehab., Civ. No. 11-1629, 2012 WL 1833888, at *5 (E.D. Cal. May 18, 2012). Minnesota Statute § 609.52 is a criminal statute governing the crime of theft. Under Minnesota law, "[a] criminal statute does not give rise to a civil cause of action unless the statue expressly or by clear implication so provides." Summers v. R & D Agency, Inc., 593 N.W.2d 241, 245 (Minn. Ct. App. 1999).

Chrysler Corp. v. Brown, 441 U.S. 281, 316 (1979) ("[T]his Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.' ")). A claim of "grand larceny" cannot confer subject matter jurisdiction on the Court.

This is the third time Hudson has frivolously asserted claims under criminal statutes. In Hudson v. Dillard, Civ. No. 15-2542 (ADM/JJK), the court explained to Hudson that "'[c]ourts repeatedly have held that there is no private right of action under § 241, even though the statute allows federal authorities to pursue criminal charges.'" Order dated June 4, 2015 (quoting Wadena, 152 F.3d at 846)) [Docket No. 3]. Likewise, in Hudson I, Magistrate Judge Keyes reminded Hudson that he had been told by the court in Dillard that he could not pursue private criminal prosecution, but despite that admonition, he brought such claims against Chase. Hudson I, Report and Recommendation, n.1. Magistrate Judge Keyes warned Hudson "that if he continues to frivolously threaten private criminal prosecution in lawsuits filed in this District, it may become necessary to impose restrictions on his ability to initiate proceedings without the prior approval of a judge or magistrate judge." Id. Therefore, when Hudson commenced the instant suit, he knew he could not bring any claims against WGC premised on federal criminal statutes.

In sum, Hudson's claims arising under Title 18 cannot confer subject matter jurisdiction because they are patently meritless. See e.g. Coleman v. Blair, 166 Fed. Appx. 358, 359 (10th Cir. 2006) (affirming district court's dismissal of claims based on

14

Title 18, which did not confer a private right of action, for lack of subject matter jurisdiction).

Hudson's claim that his procedural due process rights were violated is similarly meritless and therefore, cannot confer subject matter jurisdiction. Under the Due Process Clause, the government may not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. Thus, to prevail on a procedural due process claim, a plaintiff must establish that a <u>state actor</u> deprived him of a life, liberty, or property interest protected by the Constitution without providing adequate process. See <u>Kroupa v. Nielsen</u>, 731 F.3d 813, 818 (8th Cir. 2013) (explaining that a "procedural due process claim turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due' "); <u>Krentz v. Robertson Fire Prot. Dist.</u>, 228 F.3d 897, 902 (8th Cir. 2000) ("Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'").

Moreover, as Hudson well knows, due process claims must be pursued via 42 U.S.C. § 1983. <u>Hudson I,</u> Report and Recommendation, p. 3, n.2 ("Hudson also claims repeatedly that defendants violated his procedural due process rights. It is not clear whether this claim differs in any way from the claim Hudson attempts to put forward under § 1983. In any event, § 1983 is the vehicle through which civil claims of constitutional violations such as violations of procedural due process must be brought against state actors. Thus, Hudson's procedural due process claim is simply another §

1983 claim.") (citation omitted). WGC is not a state actor and Hudson failed to show that WGC was acting under color of law. Hudson cannot sue WGC for any procedural due process violation he claimed to have suffered.

For all of these reasons, the Court concludes that Hudson has alleged no viable federal claims and therefore, it lacks subject matter jurisdiction over this suit.

### B. State Claims

Hudson sued WGC for "malicious use of process" (or "gross malicious use of process") – all state claims. Having concluded that Hudson has no viable federal claims, the Court cannot exercise supplemental jurisdiction over these state law claims. City of Kansas City v. Yarco Co., 625 F.3d 1038, 1041 (8th Cir. 2010) ("Supplemental jurisdiction requires at least one claim within the district court's original jurisdiction."); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001) (stating that if a court dismisses for lack of subject matter jurisdiction, it has no discretion to exercise supplemental jurisdiction and must dismiss all claims).

### C. Hudson's Motion for Default Judgment

Hudson served WGC with his Complaint on January 11, 2016 [Docket No. 4] and WGC timely moved to join S & A's Motion to Dismiss on February 1, 2016. There is no basis for default judgment. Hudson's motion for a default judgment should be denied.

## III. RECOMMENDATION

For the reasons set forth above, the Court recommends that:

1. Defendant Wilford, Geske & Cook, P.A.'s Motion to Join in Schiller & Adam's Motion to Dismiss [Docket No. 16] be **GRANTED.**

  2. Schiller & Adam's Motion to Dismiss [Docket No. 6] be **GRANTED** as follows:

  A. All federal claims brought by Stephen C. Hudson, Sr. against Wilford, Geske & Cook, P.A. under 18 U.S.C. §§ 241, 242 and § 245 and any claims of grand larceny arising under Title 18 be **DISMISSED WITH PREJUDICE.**

  B. All claims brought by Stephen C. Hudson, Sr. against Wilford, Geske & Cook, P.A. asserting a violation of procedural due process be **DISMISSED WITH PREJUDICE.**

  C. All claims brought by Stephen C. Hudson, Sr. against Wilford, Geske & Cook, P.A. asserting claims under 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE.**

  3. All state claims brought by Stephen C. Hudson, Sr. against Wilford, Geske & Cook, P.A. be **DISMISSED WITHOUT PREJUDICE**.

  4. Plaintiff's Request for Default Judgment [Docket No. 24] be **DENIED;**

Dated: May 11, 2016                         *Janie S. Mayeron*
                                            JANIE S. MAYERON
                                            United States Magistrate Judge

## **NOTICE**

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date**: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.