# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephen C. Hudson, Sr., | Case No. 16-cv-0058 (SRN/JSM) |
| Plaintiff, | |
| v. | |
| Wilford, Geske & Cook, P.A.[1], | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Stephen C. Hudson, Sr., *pro se*, 3300 4th Ave. North, Conin Building #14, Anoka, MN 55303.

Michael A. Klutho and Uzodima F. Aba-Onu, Bassford Remele, P.A., 33 South 6th St., Ste. 3800, Minneapolis, MN 55402, for Defendant Wilford, Geske & Cook, P.A.

Curt N. Trisko, The Academy Law Group, P.A., 25 North Dale St., St. Paul, MN 55102, for Defendant Schiller & Adam, P.A.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Stephen C. Hudson, Sr.'s Objection to the Court's Issuance of an "Amended Report and Recommendation" ("Pl.'s Obj.") [Doc. No 57]. Plaintiff objects to the Amended Report and Recommendation ("Am. R & R") dated May 11, 2016 [Doc. No. 56]. For the reasons set forth below, Plaintiff's Objections are overruled and the Amended R & R is adopted in its entirety.

---

[1] Originally, this case included Defendant Schiller & Adam, P.A. ("S & A") (See Compl. [Doc. No. 1].) As discussed below, S & A was dismissed after Plaintiff voluntarily withdrew his claims against it. However, Plaintiff now attempts to reassert claims against S & A.

## I.     BACKGROUND

The facts and procedural history of this matter are accurately summarized in the Amended R & R.  Plaintiff Stephen C. Hudson, Sr. ("Hudson") does not object to this summary, but rather to the conclusions and recommendations of the Amended R & R. (See Pl.'s Obj.)   Thus, the Court incorporates the Amended R & R's summary by reference.

### A. Facts

Hudson's suit stems from the foreclosure of his home.  (Am. R & R at 2; see Compl. [Doc. No. 1].)  According to Hudson, Defendant Wilford, Geske & Cook, P.A. ("WGC"), Schiller & Adam, P.A. ("S & A") and Select Portfolio Services ("SPS")[2] conspired to defraud him by illegally arranging to foreclose on and subsequently sell his home.  (See Am. R & R at 3; Compl.)

The mortgage on Hudson's home was held by Deutsche Bank ("DB") which used SPS to service the loan.  (Am. R & R at 3.)  From November 2013 through May 2014, Hudson repeatedly demanded that SPS allow him to see the "wet ink mortgage" which allegedly gave SPS a legal interest in his home.  (Id.)  SPS refused and on June 23, 2014, WGC (through one of its attorneys, "Mortensen") informed Hudson it was retained by SPS to foreclose on his property.  (Id.)  Hudson again demanded to see the "wet ink mortgage."  (Id.)  WGC provided Hudson with proof of SPS's claim, but Hudson alleges that documentation merely proved that his mortgage was an "illegal" subprime mortgage and that the lien did not contain a legal description of the property.  (Id.)  WGC refused

---

[2] SPS is not named as a defendant in Hudson's suit.  (See Compl.)

Hudson's numerous demands that it produce the "wet ink mortgage" and instead directed him to the Hennepin County Registrar of Titles to look for legal documents regarding the mortgage lien.  (Id. at 3–4.)

Hudson alleges that on February 1, 2015, he sent WGC an email challenging WGC's status as the legal representative of SPS.  (Id. at 4.)  Hudson declared that if he did not receive a response from WGC, he would assume WGC no longer represented SPS.  (Id.)  WGC never replied, but later, on April 8, 2015, sent Hudson a Notice of Sale regarding his home.  (Id.)  According to Hudson, WGC did not represent SPS and thus could not initiate foreclosure proceedings.  (Id.)  On April 29, 2015, WGC sent Hudson another letter "fraudulently" informing him that SPS had retained WGC to foreclose on the property, and that he had 30 days to contest the foreclosure's validity.  (Id.)

On May 7, 2015 WGC served a Notice of Foreclosure Sale on Hudson, which set the sale date for June 17, 2015.  (Id.)  Hudson claims that scheduling the sale before the 30-day statutory dispute period ended was illegal.  (Id.)  WGC then postponed the sale until July 7, 2015, an act Hudson claims was because of WGC's previous failure to abide by the 30-day dispute period.  (Id.)  However, Hudson alleges WGC never served him notice of the postponement, despite Hudson's understanding that personal service was required under the circumstances.  (Id.)  On May 20, 2015, WGC served a second Notice of Foreclosure Sale by mail, but Hudson claims he was entitled to receive personal service.  (Id.).  Then, on May 24, 2015, Hudson claims he received another Notice of Sale listing the sale date as June 17, 2015.  (Id. at 5.)

3

As the July 7 property sale approached, Hudson contacted WGC and demanded that the sale be reversed because of WGC's "illegal actions." (Id.) WGC responded that the sale would proceed as scheduled, that all legal requirements were met, and that Hudson was provided with the required proof of SPS's claim allowing the foreclosure. (Id.) According to Hudson, on July 7, 2015, "defendants"[3] sold his home in violation of state and federal law. (Id.)

On September 12, 2015, Hudson emailed WGC stating his desire to resolve the "grossly illegal" foreclosure sale and demanding a satisfaction of mortgage. (Id.) WGC replied that it would take the offer to SPS and get back to Hudson. (Id.) After not hearing back from WGC for several months, Hudson again emailed WGC noting that the statutory redemption period would expire in January 2016 and that he had not heard back about his offer. (Id. at 5–6.) Hudson claims that shortly following this email, WGC contacted S & A to ask that S & A contact Hudson "purporting to legally represent DB and SPS." (Id. at 6.) S & A emailed Hudson on November 4, 2015, stated that it represented DB, and informed Hudson that DB would not issue a satisfaction of mortgage and considered the foreclosure valid. (Id.)

In response, Hudson informed S & A that neither it nor WGC legally represented DB or SPS in connection with the foreclosure. (Id.) Hudson demanded that S & A provide him with proof DB had retained it, or risk being sued. (Id.) S & A responded that it was not obligated, nor ethically allowed, to provide Hudson with attorney-client

---

[3] Hudson regularly fails to distinguish between the Defendants when discussing the various acts they allegedly engaged in. (See, e.g., Compl. at ¶¶ 12, 19, 28, 32, 37; see Am. R & R at 4, n.4.)

privileged communications (like the engagement letter Hudson demanded), but reiterated

that it represented DB and SPS in the foreclosure.  (Id.)

## B. Procedural History

Based on the facts described above, Hudson alleges that:

> the Defendants have grossly and fraudulently conspired to steal Plaintiff's
> homestead property; property which constitutes Plaintiff's only 'retirement
> savings.' The Defendants stole Plaintiff's homestead property by 1).
> Utilizing two unregistered legal agents (on two separate occasions), 2).
> Legally recognizing a predatory adjustable rate note which is invalid and
> unenforceable under Minnesota law, 3) failing to produce a mortgage lien
> containing the legal description of Plaintiff's homestead property and 4)
> violating a multitude of other Minnesota foreclosure proceeding laws. The
> Defendants committed this egregious act after Plaintiff informed the
> Defendants of the grossly illegal nature of their intended actions.

(Compl. at ¶ 55.)  Hudson claims that Defendants' actions violated his right to due

process, federal criminal statutes 18 U.S.C. §§ 241, 242, and 245, and amounted to

"grand larceny," malicious use of process, and gross malicious use of process.  (Id. at ¶

4.)  Hudson seeks both monetary relief, (id., Prayer for Relief at ¶ 1), and "the

confinement of the Defendants as prescribed by law," (id., Prayer for Relief at ¶ 2).[4]

In lieu of answering Hudson's Complaint, S & A filed a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6).  (See Def. Schiller & Adam, P.A.'s Mot. to

---

[4] This is not the first time Hudson has sued regarding the foreclosure of his home.  He
previously brought suit against WGC, Mortenson, SPS, and others asserting claims and
factual allegations almost identical to those in the present matter.  (See Hudson v. Chase
Bank, LLC et al., 15-cv-3034 (ADM/JJK) (hereinafter, "Hudson I").)  Hudson's civil
claims were summarily dismissed in relevant part because he relied on criminal statutes
with no private cause of action and asserted them against non-state actors.  (See id., Doc.
No. 3 at 2–3.)  Hudson was warned that "if he continues to frivolously threaten private
criminal prosecution in lawsuits filed in this District, it may become necessary to impose
restrictions on his ability to initiate proceedings without the prior approval of a judge or
magistrate judge."  (Id., Doc. No. 3 at 2, n.1.)

Dismiss [Doc. No. 6].)  WGC also did not answer the Complaint, but moved to join S & A's Motion to Dismiss.  (See Def. Wilford, Geske & Cook, P.A.'s Joinder in Def. Schiller & Adam, P.A.'s Mot. to Dismiss [Doc. No. 16].)  Hudson, believing Defendants failed to answer his Complaint within the required timeframe and alleging numerous deficiencies in Defendants' arguments in support of dismissal, moved for default judgment.  (See Pl.'s Request for Default Judgment ("Request for Default") [Doc. No. 24].)  Hudson also withdrew his request that "the Court confine any of the Defendants or their counsel," and espoused his willingness "to settle this matter outside of federal statutory relief requirements."  (Id. at 2.)

While these various motions were pending, Hudson moved to voluntarily dismiss his claims against S & A.  (See Pl.'s Notice of Voluntary Dismissal [Doc. No. 51].)  The Court granted that motion.  (Order dated April 26, 2016 [Doc. No. 53].)  However, Hudson continued to pursue his claims against WGC, opposing WGC's attempt to join S & A's Motion to Dismiss by claiming that WGC's motion was filed "grossly fraudulently and in violation of Plaintiff's Constitutional right to 'Due Process.'"  (See Pl.'s Resp. to Defendant [WGC's] Joinder [Doc. No. 27].)

In opposition to Hudson's Request for Default, WGC argued that it filed its Joinder Motion in lieu of answering the Complaint, as allowed under the Federal Rules of Civil Procedure.  (See Def. [WGC's] Mem. in Opp. to Pl.'s Request for Default Judgment ("WGC's Opposition") [Doc. No. 29].)  Hudson later replied that he was never served with WGC's Opposition.  (See Pl.'s Reply to Pl.'s Request for Default Judgment [Doc. No. 32].)  He then filed a "Demand for Default Judgment" premised on the failure

6

to serve him with WGC's Opposition.  (See Pl.'s Demand for Default Judgment [Doc. No. 34].)  Magistrate Judge Mayeron ("Judge Mayeron") denied Hudson's Request and Demand for Default, but required WGC to file a certificate of service showing it had served Hudson with its opposition papers.  (Order dated March 24, 2016 [Doc. No. 35].)

WGC responded by acknowledging that it inadvertently failed to serve a copy of its opposition on Hudson, but did serve him on March 25, 2016.  (See Aff. of Michael A. Klutho at ¶¶ 6–7 [Doc. No. 39].)  WGC also sought an extension of time to serve its opposition which, if granted, would make that opposition timely.  (See Def. [WGC's] Mot. for Extension of Time [Doc. No. 36].)  Judge Mayeron granted WGC's motion for an extension of time.  (Order dated April 4, 2016 [Doc. No. 47].)

Hudson then filed a series of objections related to this Court referring his various motions to Judge Mayeron and requesting permission to file a "procedural default motion."  (See Doc. Nos. 48, 49, 50.)  At the same time, Hudson emailed the Court demanding that Judge Mayeron be removed from the case.  (See Order dated May 10, 2016 ("May 10 Order") at 1, n.1 [Doc. No. 55].)  The Court overruled Hudson's objections and denied his demand that Judge Mayeron be removed, detailing the Court's statutory authority to assign motions to magistrate judges and holding that Judge Mayeron's rulings "against" Hudson were not a valid basis for removal.  (See id. at 1–4.)

Ultimately, Judge Mayeron recommended dismissing Hudson's Complaint for lack of subject matter jurisdiction.  (See Am. R & R at 11–16.)  Judge Mayeron noted that federal question jurisdiction could not be sustained where the federal claims were patently meritless.  (See id. at 12.)  Most of Hudson's claims center on criminal statutes

that offer no private cause of action.  (See id. at 12–15.)  Judge Mayeron also found

Hudson's due process claim failed because it was asserted against WGC, a non-state

actor.  (See id. 15–16.)  With no viable federal claims, Judge Mayeron recommended the

Court refuse to exercise supplemental jurisdiction over Hudson's state law claims for

malicious use or process.  (See id. at 16.)  Because jurisdiction was lacking, Judge

Mayeron recommended Hudson's federal and state claims be dismissed and his request

for default judgment be denied.  (Id. at 17.)

Hudson objects to both the May 10 Order[5] and the Amended R & R, although the

precise bases for his objections are not clear.  (See Pl.'s Obj.)  In general, Hudson argues

the Amended R & R was "criminally fraudulent, grossly unconstitutional, grossly

discriminatory and grossly felonious . . . ."  (Id. at 2.)  The Court liberally construes

Hudson's more specific objections below.

## II.     DISCUSSION

### A.  Standard of Review

*Pro se* complaints, like Hudson's, are liberally construed.  See Stone v. Harry, 364

F.3d 912, 914 (8th Cir. 2004).  However, even under this liberal standard, a *pro se*

complaint must contain specific facts in support of the claims it advances.  See Martin v.

Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).  Courts do not "assume facts that are not

---

[5] To the extent Hudson's objections constitute a motion that the Court reconsider its May
10 Order, that motion is denied.  Hudson presents no evidence or argument warranting
relief from that order.  See Fed. R. Civ. P. 60(b) (describing the limited circumstances
under which reconsideration is appropriate).

alleged, just because an additional factual allegation would have formed a stronger complaint." Stone, 364 F.3d at 915.

The Court must conduct a *de novo* review of any portion of a magistrate judge's report and recommendation to which specific objections are made. 28 U.S.C. § 636(b)(1); Fed. R . Civ. P. 72(b); D. Minn. L.R. 72.2(b).

## B.  Hudson's Objections

### 1.  Subject Matter Jurisdiction

In his objections, Hudson claims for the first time that WGC and Bassford Remele, P.A. ("Bassford") (the law firm representing WGC in this matter) are citizens of Germany that are "fraudulently and grossly unconstitutionally representing [DB]," which is also a German "government-sponsored financial institution."  (See Pl.'s Obj. at 1.) Presumably, Hudson's objection is an attempt to raise diversity jurisdiction.[6]  The Court construes Hudson's objection as one generally aimed at the Amended R & R's recommendations concerning subject matter jurisdiction.

"Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." Kronholm v. Fed. Deposit Ins. Corp., 915 F.2d 1171, 1174 (8th Cir. 1990).  A plaintiff bears the burden of establishing that subject matter jurisdiction exists. Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013).  "Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether subject matter jurisdiction exists." Green Acres Enters., Inc. v. United States,

---

[6] Hudson's subsequently filed Amended Complaint, discussed below, confirms this presumption.

418 F.3d 852, 856 (8th Cir. 2005).  If jurisdiction is lacking, a court must dismiss the action *sua sponte*.  Fed. R. Civ. P. 12(h)(3); <u>Williams v. Rogers</u>, 449 F.2d 513, 518 (8th Cir. 1971).

There are two bases for federal subject matter jurisdiction.  First, a complaint may allege a federal question under the Constitution or federal law.  <u>See</u> 28 U.S.C. § 1331.  However, "[a] court does not obtain subject-matter jurisdiction just because a plaintiff raises a federal question in his or her complaint.  If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." <u>Biscanin v. Merrill Lynch & Co.</u>, 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).

Second, federal courts have jurisdiction, in relevant part, where the amount in controversy is more than $75,000 and the dispute is between "citizens of different States," 28 U.S.C. § 1332(a)(1), or "citizens of different States and in which citizens or subjects of a foreign state are additional parties," 28 U.S.C. § 1332(a)(3).  Diversity jurisdiction requires that the citizenship of each plaintiff be diverse from the citizenship of each defendant, i.e. complete diversity.  <u>See</u> <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61, 68 (1996).  "Under Section 1332(a)(3), jurisdiction is . . . confined to situations where there is a U.S. citizen on each side and from different States, plus foreign parties on either or both sides." <u>Argo Glob. Special Situations Fund v. Wells Fargo Bank, N.A.</u>, 810 F. Supp. 2d 906, 909 (D. Minn. 2011).

### a.  Federal Question

Hudson fails to plead a federal question creating subject matter jurisdiction under 28 U.S.C. § 1331.  As Judge Mayeron correctly noted, most of Hudson's claims are based

10

on federal criminal statutes which provide no private cause of action.  (See Am. R & R at 12–13 (collecting cases which hold there is no private cause of action under 18 U.S.C. §§ 241, 242, or 245).)  Because Hudson's Title 18 claims are patently meritless, they cannot confer federal question jurisdiction.  See, e.g., Coleman v. Blair, 166 F. App'x 358, 359 (10th Cir. 2006) (affirming the dismissal of plaintiff's claims based on Title 18 for lack of subject matter jurisdiction); Hunter v. D.C., 384 F. Supp. 2d 257, 260, n.1 (D.D.C. 2005) (rejecting *pro se* plaintiff's argument that his Title 18 claims conferred federal question jurisdiction because those statutes created no private cause of action); Brown v. J.P. Morgan Chase Bank, No. 12-10826, 2012 WL 1555418, at *3 (E.D. Mich. Apr. 30, 2012) (same); see also Jackson v. O'Dell, No. 01-cv-1828 (JRT/SRN), 2002 WL 31151359, at *2 (D. Minn. Sept. 24, 2002) (dismissing plaintiff's Title 18 claim because there was no private cause of action); Crawford v. Adair, No. CIVA 3:08CV281, 2008 WL 2952488, at *2 (E.D. Va. July 29, 2008) (same).

In his Complaint, Hudson does not assert a claim under 42 U.S.C. § 1983.  (See Compl.)  However, even if he did, a § 1983 claim would not confer federal question jurisdiction because it would fail as a matter of law.  (See Am. R & R at 15–16.)  Due process challenges under § 1983 allege that a state actor deprived the claimant of an interest protected by the Constitution without due process.  See Kroupa v. Nielsen, 731 F.3d 813, 818 (8th Cir. 2013) ("Thus, a § 1983 procedural due process claim turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due.'").  However, the Fourteenth Amendment's due process protections do not apply to the conduct of private persons or

entities. <u>See</u> <u>Moore v. Carpenter</u>, 404 F.3d 1043, 1046 (8th Cir. 2005). WGC is a private law firm, not a state actor, and Hudson alleges no facts suggesting it was acting under color of law when it foreclosed on his home.

### b. Diversity

Hudson similarly fails to establish that the Court has diversity jurisdiction. His original Complaint does not claim diversity jurisdiction. (Compl. at ¶ 3 (listing only federal question as the basis for jurisdiction).) Hudson raised this argument for the first time in his objections to the Amended R & R.

Despite Hudson's failure to raise diversity jurisdiction until he filed his objections, Judge Mayeron prudently anticipated this argument. (<u>See</u> Amended R & R at 12, n.7.) She noted that <u>Hudson I</u> determined that both Hudson and WGC were citizens of Minnesota and thus complete diversity was lacking. (<u>See</u> <u>id.</u>) This Court agrees; since Hudson and WGC are both citizens of Minnesota there can be no diversity jurisdiction.[7]

### c. Supplemental Jurisdiction Over Hudson's State Law Claims

Hudson does not specifically challenge the Amended R & R's recommendation that the Court not exercise supplemental jurisdiction over his state law claims for "malicious use of process." (<u>See</u> Am. R & R at 16.) Even if he did, that challenge would fail. "[C]ourts have uniformly held that, when original federal jurisdiction is wholly lacking (as here), [28 U.S.C. § 1367] confers no discretion to exercise supplemental jurisdiction over remaining state-law claims." <u>Dakota, Minnesota & E. R.R. Corp. v.</u>

---

[7] Hudson's attempt to implicate Bassford, which is not a party to this case, in the diversity analysis does not change the result. The Court addresses this issue in depth below.

<u>Schieffer</u>, 715 F.3d 712, 713 (8th Cir. 2013).   As described above, the Court lacks original subject matter jurisdiction and thus cannot exercise supplemental jurisdiction over Hudson's state law claims.

### 2.   Hudson's Other Objections

Hudson also renews his objection to Judge Mayeron's involvement in this case, but provides no specifics about why her participation is improper other than alleging that Judge Mayeron was engaged in "criminal behavior."   (<u>See</u> Pl.'s Obj. at 2.)   Lastly, Hudson objects that the Amended R & R "grossly prejudicially, grossly criminally and grossly illegally" required him to file objections to the Amended R & R within fourteen days of being served.  (<u>Id.</u>)

These objections are wholly without merit.   As the Court previously stated, Hudson provides no legitimate basis for removing Judge Mayeron from this case.  (May 10 Order at 1, n.1.)   His conclusory allegation that Judge Mayeron was engaged in "criminal behavior" does nothing to bolster his argument.

Similarly, Hudson's protests about the process for objecting are meritless.   The Local Rules plainly set forth the procedure for parties, at their discretion, to object to the report and recommendation of a magistrate judge.   <u>See</u> D. Minn. L.R. 72.2(b)(1) ("A party *may* file and serve specific written objections to a magistrate judge's proposed findings and recommendations . . . ." (emphasis added).)   Hudson was given notice of this exact rule when he was served with the Amended R & R.   (<u>See</u> Am. R & R at 18.)   He

may not object to his decision to object, or the procedures that govern objections generally.[8]

### C. Hudson's Attempt to Amend His Complaint

A few weeks after filing his Objections, Hudson filed an Amended Complaint without the consent of this Court, Judge Mayeron, or Defendants.  (See Am. Compl. [Doc. No. 58].)  The Amended Complaint names WGC, Bassford, and the Academy Law Group, P.A. ("ALG") as defendants.  (Id. at ¶ 2.)  Hudson alleges that ALG is the new name of S & A.  (See id. at ¶ 55.)  The Amended Complaint again asserts claims based on 18 U.S.C. §§ 241, 242, and 245 and "gross malicious use of process" but adds an "equal protection under the law" 42 U.S.C. § 1983 claim.  (Id. at ¶ 4.)

In the Amended Complaint, Hudson alleges that the Court has both federal question and diversity jurisdiction.  (Id. at ¶ 3.)  Hudson claims, without any factual support, that Bassford is incorporated in "The Federal Republic of Germany," Lawrence Wilford ("Wilford") (a partner at WGC) is a citizen of the Federal Republic of Germany, and ALG is incorporated in the United States of America.  (See id. at ¶ 5.)

In general, Hudson's Amended Complaint contains many of the same allegations regarding WGC and S & A's conduct during the foreclosure of his home.  (Compare Am. Compl. at ¶¶ 10–12, 15, 22–27 with Compl. at ¶¶ 9–39.)  He provides additional details about previous legal actions he brought in state court to challenge the foreclosure, none of which were successful.  (See Am. Compl. at ¶¶ 7–9, 13–14, 16–21.)  However, the

---

[8] To the extent Hudson's objection is to the Court's referral of the various motions to Judge Mayeron in the first place, that objection also fails.  (See May 10 Order at 3–4 (detailing the statutory authority allowing referral to magistrate judges).)

bulk of the Amended Complaint relates to the alleged improper conduct of WGC, Bassford, and ALG in responding to Hudson's original Complaint and associated motions.  (See id. at ¶¶ 27–54.)  Finally, Hudson presents new allegations related to ALG's conduct in evicting him from the property after the foreclosure.  (See id. at ¶¶ 56–72.)

Judge Mayeron denied the Amended Complaint and ordered it stricken from the record because Hudson failed to comply with Federal Rule of Civil Procedure 15(a). (See Order dated June 7, 2016 ("June 7 Order") [Doc. No. 59].)  Hudson then filed a "demand" that this Court "immediately file and issue a legal case order regarding the court's apparent denial [sic] Plaintiff's legally filed Amended Complaint so that Plaintiff may immediately begin to appeal this unconstitutional court order."  (Pl.'s Demand for the Court to File and Issue a Case Order ("Hudson's Demand") at 3 [Doc. No. 61].)  In that demand, Hudson claims that Judge Mayeron and this Court "grossly illegally" denied him his "constitutional right" to file an amended complaint.  (See id. at 1–2.) Specifically, Hudson argues his right to file an amended complaint was violated by various orders which forbid any party from filing additional motions, pleadings, or documents until S & A's Motion to Dismiss and the parties' associated motions were ruled on.  (See id. (referring to Doc. Nos. 14, 26, and 35).)  He also objects to the June 7 Order denying his Amended Complaint and ordering it stricken from the record.  (See id. at 3.)

The Federal Rules of Civil Procedure allow litigants to amend their complaints pursuant to certain limitations.  See Fed. R. Civ. P. 15.  A party may amend its pleading

once as a matter of course within 21 days after it was served, or within 21 days after service of a responsive pleading or certain types of motions. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend its pleading with written consent from the opposing party, or leave of the court. Fed. R. Civ. P. 15(a)(2). "The Court should freely give leave when justice so requires." Id. "But a party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." Plymouth Cty., Iowa v. Merscorp, Inc., 774 F.3d 1155, 1160 (8th Cir. 2014). A motion to amend is properly denied if amendment is futile. Id.

Hudson's Amended Complaint was filed long after the 21 day period for amendment as a matter of course. Hudson also lacked written consent from Defendants. Although Hudson repeatedly emailed this Court requesting leave to file the Amended Complaint, he never received permission to do so. Hudson filed his Amended Complaint nonetheless, in violation of Rule 15(a). Thus, Judge Mayeron's denial of the Amended Complaint and order that it be stricken were proper.

Even assuming Hudson properly moved for leave to amend—which he has not— the Court would deny that motion as futile. Hudson's Amended Complaint does nothing to remedy the fatal jurisdictional flaws of his original Complaint. Hudson again asserts claims based on federal criminal statutes for which there is no private cause of action. He attempts to add a due process claim under 42 U.S.C. § 1983, but that claim necessarily fails because WGC, Bassford, and ALG (all private law firms) are non-state actors. Thus, there is no federal question jurisdiction.

Diversity jurisdiction is also lacking.  Hudson's unsupported allegations about the citizenship of WGC, Bassford, and ALG do not create diversity for three reasons.  First, it was previously determined in Hudson I that WGC is a citizen of Minnesota.  Second, Hudson's own pleading acknowledges that ALG is incorporated in the United States.  (Am. Compl. at ¶ 5.)  ALG's website (www.http://theacademylawgroup.com/) confirms that it is a Minnesota law firm located in St. Paul, Minnesota, making it a citizen of Minnesota.  Third, Hudson's claim that Bassford is incorporated in Germany lacks merit.  Bassford's website (http://www.bassford.com/) confirms it is a Minnesota law firm located in Minneapolis, Minnesota, making it a citizen of Minnesota.  Far from there being complete diversity, the opposite is true; Hudson, WGC, Bassford, and ALG are all citizens of Minnesota.

Hudson's Amended Complaint suffers from the same subject matter jurisdiction issues as his original Complaint, making amendment futile.  Furthermore, despite being warned about filing frivolous claims, see supra n.4, Hudson persists.  This Court again warns Hudson that should he continue filing frivolous claims related to the foreclosure of his home, he may face consequences including, but not limited to, proscriptions on his ability to file future lawsuits in this District.

## III.  Order

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objections to the Court's Issuance of an "Amended Report and Recommendation" [Doc. No. 57] are **OVERRULED**.

2.  The Amended Report and Recommendation [Doc. No. 56] is **ADOPTED IN ITS ENTIRETY**.

3.  Defendant Wilford, Geske & Cook, P.A.'s ("WGC") Motion to Join in Schiller & Adam's Motion to Dismiss [Doc. No. 16] is **GRANTED**.

4.  Schiller & Adam's Motion to Dismiss [Doc. No. 6] is **GRANTED** as follows:

    a.  All federal claims brought by Plaintiff Hudson ("Hudson") against WGC under 18 U.S.C. §§ 241, 242, and 245 and any claims of grand larceny arising under Title 18 are **DISMISSED WITH PREJUDICE**;

    b.  All claims brought by Hudson against WGC asserting a violation of due process are **DISMISSED WITH PREJUDICE**;

    c.  All claims brought by Hudson against WGC under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE;** and

    d.  All state law claims brought by Hudson against WGC are **DISMISSED WITHOUT PREJUDICE**.

5.  Plaintiff's Request for Default Judgment [Doc. No. 24] is **DENIED**.

6.  To the extent Plaintiff's Demand for the Court to File and Issue a Case Order [Doc. No. 61] contained objections, those objections are **OVERRULED**. Plaintiff's Demand is otherwise **DENIED AS MOOT**.

7.  Judge Mayeron's Order dated June 7, 2016 [Doc. No. 59] is **AFFIRMED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  June 17, 2016          s/ Susan Richard Nelson
                               SUSAN RICHARD NELSON
                               United States District Judge